Next case will be 09-3265, head of the Office of Personnel Management. Mr. President, we're ready for the procedure. May it please the Court, Mr. Schumpf. My name is Jack Flann. I practice in Frankfort, Kentucky. I'm the attorney for the petitioner Jane Head. This is an appeal that's been filed from a decision made regarding a denial of former survivor benefits, former spouse survivor benefits by the Office of Policy and Management. We believe that this case has a couple of factors that are unique that merit appropriate consideration on this appeal. For a little background, Mr. and Ms. Head were married in July of 1968. They had a 40-year marriage. Mr. Head retired from the Federal Civil Service in October 1998, and at that time he made an election of a maximum survivor benefit election for his wife, Jane. Parties were divorced on November 20, 2007, and after the divorce decree was entered, certain actions took place between the parties in the divorce court relative to the property issues which were decided and had the effect of making the case interlocutory in nature. There were no exceptions filed as far as the granting of the divorce, and in fact, Mr. and Ms. Head were divorced on November 20, 2007.  There was a quadro that was attempted to be sent to the Office of Personnel Management to advise them of the order of the court and to as well make them aware of the decision of the court, and the court decided that as far as the retirement benefits and the retirements that were available in this action, that they would be treated and divided equally between the parties and that subsequent qualified domestic relations orders would be entered to inform those agencies of the particulars regarding the arrangements and how they were to be handled. While that quadro was being considered by OPM, Mr. Head died. He died on March 7, 2008, and on March 6, 2008, he wrote a letter to OPM. It's a very, very brief and concise letter, and the letter basically told OPM, I'm divorced. Here's a copy of my divorce decree. I'd like to make one change and one change only, and that's in my health insurance and leave everything else as is. OPM gave that letter no consideration whatsoever, and in fact, they wrote back on the 14th of March, seven days after Mr. Head had already died, to advise that they had rejected the quadro as tender solely on the grounds that it had ERISA language and for Ms. Head and her counsel to take other steps to submit other modified orders for their consideration. They then learned of Mr. Head's death, and their reaction simply was, we've got a hard, fast rule. Somebody dies, and they haven't made an election, and we haven't received any papers, the case is over. And we take issue with that because we think there are two factors which are present in this case that are exceptional. Number one, we have the letter, and we think that the letter is capable of a construction of saying just what I had indicated, that being, I want to make one change, and one change only to my plan, keep everything else like it is, and that was the gentleman's final expression, which was totally ignored by OPM after 30 years of very dignified and significant service. But could that letter be taken on the basis that he only wanted to change his medical insurance provision? Because that's all it mentions. It doesn't say keep everything else the same. I think the letter is capable of the construction, Your Honor, that I want to make one change, and one change only. And I think the letter certainly lends itself to such an interpretation. And like I say, what I'm trying to interpret is only that change, period. Again, the letter, I think, is capable of construction, and the construction of this court. The letter says please adjust my annuity accordingly. Yes. And the only thing accordingly is to adjust the medical plan from family to single. That's correct, make one change. And there's no question that this letter did finally arrive at OPM. It did arrive, and they acknowledged the receipt of it, but they further acknowledged, Your Honor, that they gave it no consideration whatsoever because he was dead. He died the next day. The other fact of this case that we think is unique is again- Well, isn't the problem, though, that, I mean, let's assume for purposes of argument that he was saying that there was also a sentence in the letter that said, and by the way, in October of 1998 when I retired, I elected a maximum survivor benefit for my wife, and that election is still in place. Assume that's what you're telling me, that you'd like me to construe the letter. Yes, sir, and if it was in that letter, we wouldn't be here today. Really? Isn't what's at stake the divorce decree and the division of the property? Yes, and what is at stake, Your Honor, is what courts. But I thought part of your problem, your bigger hurdle, was that there's no reference that I saw until the very final, the second quadrant. There was no reference to a survivor annuity. That's correct. And I thought the law was that whatever it is you're claiming has got to be reflected in the first decree that is dividing up the property. Or unless it's modified, and, again, I think that's what the court needs to do. So, yeah, I understand that, but there are some case laws about modification, and if you're modifying something that was already in the decree, that's okay, but if you're adding something that wasn't in the first decree, that's not a modification, that's something new. And so my understanding, correct me if I'm wrong, my understanding was that your major hurdle there was that you can't point to any reference to a survivor benefit until the November, way very late in the game, quadrant when it got cleaned up. And I thought the law was against you there saying it's too late. Yes, sir. Again, I think that emphasis needs to be made on the March 12th letter that was written by OPM saying we're not giving the quadro any consideration. Send us another one. And that's exactly what the letter says and exactly what we did. I understand that, but that could be they're simply saying they don't understand that there's any attempt to be dividing up survivor annuity, and since people are alive, they want to know what's going on with, I guess, with the retirement annuity. They admit, Your Honor, that at the time they wrote that letter, they did not know he was dead. And, again, the case was interlocutory. The time for appeal had not run on the property issues. Either party could have gone before the court, which we eventually did, to have modification occur regarding this issue. And, again, the focal point of the case is because the case was interlocutory, it's just like the situation in Griffin v. OPM, where the parties there decided to bifurcate their proceedings. And they granted the divorce. The husband dies, but the property issues remain wide open. And in that case, this court said it's appropriate under these circumstances. I thought the original divorce agreement was done by a settlement. No, sir. This was a hotly contested divorce that lasted more than two years. Judge Rohr was very explicit in his findings of fact and conclusions of law of the case. Again, it was a two-year hotly contested divorce, and motions after the divorce were hotly contested regarding the interlocutory property issues that remained. All right. Was the judge's decision to divide the civil service annuity and the military's retirement benefit equally? Half and equally, and he went on to explain what he intended by half and equally was that it be treated equally in all respects. Thank you. Thank you, Your Honor. I'll yield to Mr. Schunk at this time. Thank you. Okay. Mr. Schunk. May it please the Court. First, speaking briefly to the letter from OPM dated March of 2008, that letter is of no moment in these proceedings. The letter states only that OPM will affect amended orders for apportionment purposes, and that's all the letter states. Apportionment purposes that are for a percentage of the payment that gets paid to the former spouse, not eligibility determinations as to survivor benefits. Modified decrees are not acceptable for those purposes. In accordance with 8341H4. The Court's affirmance of the Board's decision in this case as a result rests upon the Court's recognition of two basic propositions. First, that the initial order dividing marital property did not provide Ms. Head with a former spouse survivor's annuity. And second, that following the couple's divorce, Mr. Head did not elect for Ms. Head to receive such an annuity. First, the court orders. For a court order to be valid and effective in providing a former spouse a survivor's annuity, Excuse me one second. For informational purposes, is that notification sent to both the husband and the former wife and the husband too, or just to the annuitant? The March 12th letter was sent to Mr. Flynn as counsel for Ms. Head. As far as the ability to change the annuity is concerned? Well, that notice is sent only to the annuitant or the former employee. That's only sent to the annuitant. It is, Your Honor. There's no legal requirement anywhere that it be sent to the former spouse or to a spouse. As to the orders, 8341H1-4 requires that for an order to be effective, it must expressly provide for an annuity and be the first marital order dividing marital property. Such is not the case here. The first order dividing property here, the November 7th decree, does not provide for a former spouse a survivor's annuity for Ms. Head. But your adversary says that's not a final order. That's true, Your Honor. This is the November 2007 finding of fact concluding law, and that's what you're talking about? It is, Your Honor. But he says that wasn't a final order. That's difficult to understand, Your Honor. The proceedings were not interlocutory, nor is there any case or law supported for the idea that something that is not yet appealed or the appeal times have not run, even if those times have not run, whether something is truly interlocutory. Now, the November 20th 2007 decree states, this is page 6 of the response appendix, that it is a final and appealable order. Ms. Head stipulated, response appendix 14, that the couple divorced on November 20th of 2007. Does it say it's final and appealable? It does. This is page 8, Your Honor, excuse me, of response appendix. Okay, I see. And finally, Ms. Head testified that the couple divorced on November 20th 2007. It simply was not interlocutory. The order itself divided property and provided only that Ms. Head was entitled. Now, even if you were wrong on this, that this order wasn't the first order, the first quadrant was an attempt to divide the property, right? Exactly, Your Honor. The first quadrant was entered. And all that states is that Ms. Head was awarded 50% of the U.S. Civil Service retirement pay. There is no reference, either explicit or implied, to there being a survivor benefit in action before Ms. Head. Accordingly, in accordance with statute, subsections H1 through 4, there is no express provision providing Ms. Head a former spouse buyer's annuity in this case. Second is the question of whether Mr. Head elected to provide Ms. Head an annuity. And as to that question, there is no evidence. Do we have this? Her adversary referred to an October 1998 document at the time that Elmo Head retired. He elected maximum survivor benefit. Do we have that in the record? That is before the MSPB, Your Honor. I'm not sure whether that's included. It's not in our appendix. It very well could be in the petitioner's appendix, Your Honor. What Mr. Flanagan wants to do is to say that was the election for the survivor benefit and that he never altered that election because he would like us to construe Mr. Head's letter that was received posthumously but was written before he died as to say, everything I've got on this record with you all but OPM stays put. The only thing that changes is my medical coverage. So would it make any difference if he had in fact in October of 1998 notified OPM that he wanted his wife to have maximum survivor benefits? Not at all, Your Honor. That would expressly contravene 8341H1, which provides that following a divorce, there must be an express provision either in a court order or in an independent election from the annuitant to provide a former spouse a survivor's annuity, of which again the court orders are insufficient here. And regardless of Mr. Head's election at the time of his retirement, after the divorce Well, Mr. Head wants to say that the March 6, 2008 letter is actually an election. Yes, Your Honor, which is simply incorrect. Why is that necessarily so? There are two fundamental problems with the March 6, 2008 letter. First, for an election to be valid, it must be filed with OPM. Do you deny that OPM received this? No, Your Honor. OPM at some point received the letter. It was not filed with OPM, nor was it posted by OPM. What does filed with OPM mean? It would mean that it was delivered by Mr. Head to OPM. Why did it have to be delivered by him? It could be delivered by his lawyer, couldn't it? Yes, Your Honor, it could be delivered by his lawyer. So it was delivered by somebody, and it was received, and OPM's got it. Your filed argument based on the regulation seemed to me to be failing, because what that would mean is that all OPM has to do to destroy anybody's claim is to sort of receive it but not put a file number on it. Filed with means sent to, doesn't it? Respectfully, Your Honor, that's not quite correct. If someone files something with a court and the court somehow misplaces the file and it was still filed on that date, which is exactly the point here, the problem with the March 6th letter, and there's two problems. The first problem is that it was not posted by Mr. Head. He never made the decision to mail that letter to OPM. Had he mailed the letter or at a minimum directed someone to mail the letter? How do we know? How do we know he didn't write the letter on the 6th and say to his wife, put it in the mailbox, and that she was too busy or was late in the day on the 6th or whatever? Maybe he wrote it early in the morning and said, run it down, put it in the post office, and she forgot. Or she wasn't there at that stage in the game, right? We don't know how it got into OPM's hands, but OPM concedes that it received the letter. Yes, Your Honor. In accordance with the Cheeseman case, it is the petitioner's burden to demonstrate an entitlement to survivor benefits. There's a world of possibilities as to conversations Mr. Head may or may not have had regarding the March 6th letter. What's undisputed is that there's nothing in the record demonstrating his intent to deliver that letter to OPM, nor did Mr. Head. Don't you think the fact that it's addressed to OPM is some indication of the intent of the author? Certainly to write the letter, Your Honor. But again, it was not sent by Mr. Head to OPM. But regardless, even if the court were to disagree and to find that it was filed with OPM, the letter still does not elect for Mr. Head to provide a survivor's liberty. 8341H1... Well, that's why I keep asking you about the October 1998 election at retirement that says, I'm retiring, I'm electing the max survivor benefit for my wife. I thought your real point was that following a divorce, there has to be another election. The world changes after a divorce, Your Honor. That's exactly correct. After a divorce, there needs to be another election, or it must be expressly provided for in the divorce decree, and the election must also be expressly provided for. Well, Mr. Flynn would say that the March 6th letter is a ratification of the earlier election. Which is incorrect. Post-divorce, I'm saying, by the way, I still want my max survivor annuity to go to my wife. Which is what the letter does not say. So even if the court were to disagree with the position as to whether it's filed and consider the substance of the letter, the letter does not expressly provide, which is required by statute, that Ms. Head receive a survivor's annuity. The letter provides only that OPM should adjust his annuity accordingly. It attaches the dissolution decree, and it references his health insurance benefits. As a result of no longer being responsible for Ms. Head's health benefits, his annuity would increase. Perhaps that line of the letter referred only to that provision. Alternatively, Mr. Head was in fact attaching the decree so his annuity payment would increase as a result of there no longer being a survivor benefit. Regardless of the interpretation, though, it's not clear from the letter. And there's no express provision as required by statute for this court to give that letter effect or to authorize OPM to award Ms. Head a former spouse survivor's annuity. Accordingly, the court orders are insufficient as a matter of law, and there was no express provision in the election made by Mr. Head. Similarly, before Ms. Head received a survivor's annuity. If there are no questions for the court, thank you. Thank you. Mr. Smith. Thank you, Your Honor. With regard to where the initial designation of the survivor annuity appears, it's on page 1 of the appendix of the petitioner's brief, Your Honor. With regard to the aspect of notice. Page 1 of the appendix. Is that the end? Okay, thank you. Yes, sir. With regard to the requirement of notice, OPM does admit that Ms. Head had no knowledge of any notice requirements and that they weren't required to give her notice. I don't take argument with that, but she had no notice regarding any election that had been communicated to her. As far as what notice Mr. Head had, if any, if you'll look to their exhibit, what they say constitutes notice, I think it's identified as Exhibit 13B of OPM's brief. The fine print on that particular document is such that I couldn't read it with my regular glasses. I had to get some additional assistance, and what that says or supposedly is to inform an annuitant of his rights, duties, obligations, and liabilities with regard to a divorce situation. I submit, first of all, it's not adequate notice, and it's also very confusing notice regarding any legal requirements. The Hernandez case that we relied upon requires, first of all, notice. Again, the notice is there, but what it says and means, we have serious doubts. But secondly, what was the intent of either Mr. Head or the court in awarding a survivor benefit? We think the intent of Mr. Head is, again, his letter that he wrote the day before he died, coupled with the previous election that he made with his wife of 40 years when he retired from service. And secondly, the intent of the court is clearly expressed by Judge Bohr when he had an opportunity to express himself regarding the court's intent of what was meant by an equal award of this retirement benefit. It was an equal award as to the entire package, and to take it away from her because of these rights. That was the judge's intent. Yes, sir. But that's not necessarily Mr. Head's intent. The problem with that argument, I think, sir, is that by March 6, 2008, we don't have any reason to believe that he's any happier with the former wife than he was at the time of the divorce, and you've told us it was hotly contested. So on the day before he died, it might have delighted him to not ever have survivor annuity. I recognize the argument is there, Your Honor. But we, again, believe that his intent was expressed by his letter, which was totally ignored, and the court's intent expressed by his final order, which also totally ignored for consideration in my client's request. With regard to the total case, again, we think the case does have many equities presented on the side of my client that she is seeking what she considers to be invoking the traditional notions of fair play and substantial justice to award this, which was accumulated over a 40-year marriage. But do you appreciate that in this particular area of the law, the rules and regulations are very, very precise, and you might even want to say nitpicky? I mean, you've read the cases, and you've seen circumstances very similar to yours where someone tried to come back and dot the i's and cross the t's, that OPM lied to a squadron or second squadron of what had failed because of the pristine sort of nicety of the requirement that you must specifically state what benefit you're trying to pay. I learned that very quickly, Your Honor, with this case. And in particular, I've reviewed more than 200 cases before taking this appeal, and I was so fortunate in my research and my work to run across the case of Hernandez v. OPM and Griffin v. OPM, which I use as the two cases that we believe should influence this court in making a fair determination. And I appreciate the opportunity of appearing before the court today. It's been a pleasure. Thank you very much. The case is submitted.